# JANUARY 12, 1938

FRANK BARFIELD V. THE STATE.

No. 19129.   Delivered October 20, 1937.
Rehearing Denied January 12, 1938.

The opinion states the case.

*Robert P. Brown,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of sheep; the punishment, confinement in the penitentiary for four years.

During the first part of January, 1937, there were taken from the ranch of F. A. Smith in Concho County about fifty sheep. Thirty-six of these sheep were recovered by G. K. Stewart, foreman of the Smith ranch, from the Ringer ranch in Mason County about the 16th of January. Touching the brands on the animals prior to the theft, Mr. Stewart testified as follows:

"Those lambs were branded a fire brand on the jaw right below the left eye with a T, and they had a T right on top of their hips with red paint, and the ewes were cropped to the right and the muttons were split to the left."

As to the condition the brands were in when the sheep were recovered from the Ringer ranch, he testified as follows:

"When we found those sheep the T on the hip—the paint T —had been blotched out with a big red blotch and the fire brand had been burned with a hot iron, but where we had branded them hadn't healed up until you couldn't tell what the brand was and the T was already there under the new brand * * *."

Appellant and his wife lived in San Angelo on premises he had rented from Mrs. P. J. Wurtemburg. Mrs. Wurtemburg testified that she went to appellant's home about January 12, 1937, and upon looking into the barn observed some sheep with red paint on them. Referring to the sheep, she said: "I couldn't tell how many there were in the barn as I didn't count them; I couldn't know whether the barn was full, or not, as I didn't know how many were in there."

About the 15th of January Clarence Lowe, who was investigating the theft of Mr. Smith's sheep, went to appellant's barn. Concerning the things he found there he testified in part as follows:

"While there I looked in the barn. I had permission to go there and look. Captain Hawkins went with me. We found a bucket hanging up in the barn with some red paint in it and a square wooden block about three by five inches. I have that here in my car in Paint Rock and it is in the same condition now that it was when I found it there. The barn is divided into three partitions and this bucket with the paint and block in it (indicating) were hanging on the first partition and were about four feet from the ground. This can is marked 'Lincoln Paint.' Those things, being the block and the paint bucket, are in the same condition now as they were when I found them. We found some rolls of wire there also and we have one of them

here with us. That was found there by the end of the barn (indicating); this roll of wire has some stays, or iron rods, in it to hold it up. I would judge that that is about thirty six inch net and it is about forty or fifty feet long, but I didn't measure it. The top of this wire looks like it has red paint on it, as some of it does. The top part of this wire is about six inch mesh and the bottom is probably about two and one-half inch mesh. There is some wool on it. It has six wooden stays, I believe, and there are three iron stays; those three iron stays were woven into this netting—one at each end and the other about the middle somewhere. The iron stays are longer than the wooden ones and look like wagon rods with pieces of iron slipped over them —the rod running through the pipe; the ends of the stays are just like wagon rods, with ends crooked like wagon rods. There is a snap on one of those rods which is wired on to the crook of the rod. Those rods are near five feet long, but maybe hardly that much."

The witness testified further that he went to the Ringer ranch on the 16th of January when Mr. Stewart recovered the Smith sheep. After the sheep were recovered and shortly before the trial the witness placed the block he had found in appellant's barn on the paint brand on some of the stolen sheep. While testifying he was asked the following question: "State to the jury whether or not it (referring to the block) fit." He answered: "It is a good fit, yes." On this point he testified further as follows:

"I fitted that brand block here, myself, and put it on the backs of the sheep. It didn't have any paint on it when I fitted it on there—not any more than it has right now; it was just dry. Before fitting it on there this blotch brand was already on the place; it resembled the size and color of the blocks. That was done this morning."

It appears from the testimony that the block in question had red paint on it. The block was exhibited to Mr. Stewart and he was asked this question: "Mr. Stewart, I show you here a block. Did it resemble a blotch that that would make?" He replied in the affirmative, and was then asked this question: "How about the color?" He answered "The same color of red paint." He testified further that the sheep had no "block" brand on them prior to the time they were stolen.

W. T. Wilson, who was sixteen years of age, lived with appellant and his wife in December, 1936, and January, 1937. He owned a truck which he kept at appellant's home. A witness for the State testified that on one occasion, the exact time not

being remembered, he sold appellant an automobile tire, which he placed on a truck wheel.

It was shown in the testimony of John Henry Daniels that he visited in the home of appellant during the months of December, 1936, and the following January. About the 15th of December Wilson came to the house while the witness was there, and appellant, Wilson and the witness played cards. Later appellant and Wilson went to town together. From about the eighth to eleventh of January Wilson was at appellant's home. The witness testified: "I guess the defendant, Barfield, was there during that time." The witness said, however, that on the dates last mentioned he did not see appellant and Wilson leave the house at night together nor did he, at any time, see them making any change on the bed of Wilson's truck.

The testimony was to the further effect that the paint which was found in appellant's barn was fresh.

As to the wire found on appellant's premises, one witness testified that he found two rolls of wire in an abandoned dugout which did not have any top on it. He said: "The roll of wire there (indicating) is one of the rolls found there but Clarence Lowe had taken this one to the office and left it there; there were two more there, smaller rolls than those, that were bent up considerably and had broken stays in them." He testified further that the wire showed to have been used "to handle sheep with."

During the progress of the trial two of the stolen sheep were brought into the courtroom and exhibited to the jury.

We think the foregoing testimony tended to connect appellant with the commission of the offense and sufficiently corroborated W. T. Wilson, the accomplice witness, who testified, in substance, as follows: During the months of December, 1936, and January, 1937, the witness stayed in the home of appellant. He owned a truck which he ordinarily kept on appellant's premises. He had free access to appellant's home. About the middle of December, 1936, appellant, John Daniels and the witness were at appellant's home at night playing a game of cards. After the game was concluded appellant and witness went into the kitchen where appellant suggested that they steal some sheep, using the witness' truck in hauling same. Pursuant to their agreement, the witness secured some lumber and built side frames on his truck. Also he and appellant procured some net wire to be used as a pen when the sheep were loaded. About the 10th of January, 1937, he and appellant drove to Concho County and stole approximately 38 sheep from

F. A. Smith's ranch. At this juncture we quote from the testimony of the witness as follows: "We built a pen there of wire which we carried there from the Wurtemburg place where Frank Barfield lived. We used rods to make the wire stand up; we just pushed the rods into the ground and tied the end of the wire to the fence and then drove the sheep into the pen and loaded them in the truck; Frank Barfield and I did that. We loaded 37 or 38 in the truck; I don't remember exactly what kind of sheep they were but I believe they were lambs." After loading the sheep they were moved by the witness and appellant to appellant's home and placed in appellant's barn, which was about one hundred yards from the residence. The sheep remained in appellant's barn about twenty-four hours. The witness and appellant then loaded them and carried them to the Ringer place in Mason County. When he and appellant loaded the sheep the witness got some red paint on his clothing. On one occasion prior to the theft appellant bought a tire for witness' truck. On several occasions the witness had brought sheep to appellant's home which the witness had stolen. Appellant did not know when he put the sheep in the barn. The witness was asked this question: "Did you ever move them anywhere without his knowledge?" He answerd, "No, sir, not that I know of." The witness had been promised immunity if he would testify against appellant.

Appellant did not testify and introduced no witnesses.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant in his motion for a rehearing herein lays great stress on the case of Rubio v. State, 50 S. W. (2d) 294, which lays down the doctrine that the possession of recently stolen property, in order to have sufficient probative force as corroborating an accomplice, such possession must be exclusive. That this is a sound doctrine we do not question, but in our judgment it is not applicable in this instance. The instrument used in the blotching of the brands on the stolen sheep, if it came in such a category, was found in the barn of appellant, over which barn the accomplice witness exercised no ownership nor control, such being invested in the appellant alone.

We have carefully gone over the record in this case in the light of this motion, and see no reason why our conclusions in the original opinion should be changed.

The motion is overruled.

*Overruled.*